# UNITED STATES DISTRICT COURT
## for the DISTRICT OF COLUMBIA

**Boulangerie Christophe, LLC**

**Plaintiff,**

v.                                    **Case No. _____**

**Christophe Roux**

**Defendant.**

_____/

## VERIFIED COMPLAINT
## FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Boulangerie Christophe, LLC complains as follows against Defendant Christophe Roux:

## NATURE OF ACTION

1.      Pursuant to D.C. Code § 29-808.02, Plaintiff seeks injunctive and legal relief against Defendant Christophe Roux. The case arises out of Defendant's abandonment and repeated failure to perform his legal, contractual, and fiduciary obligations to the Plaintiff, Boulangerie Christophe, LLC (sometimes referred to as "the Bakery"). The Bakery is located in the Georgetown commercial district of Washington, D.C. On March 25, 2015, Mr. Roux, who is an experienced baker and pastry chef, formed Boulangerie Christophe, LLC with another person, Didier Martin (an experienced businessman and entrepreneur).  Each became a member of the LLC, and each owns 50% of the shares. According to the Operating Agreement, Mr. Roux is the Chief Operating Officer ("COO"), while Mr. Martin is the Chief Executive Officer ("CEO").

2.     The two members were to work cooperatively together to manage the Bakery. Mr. Roux's primary responsibility was to be in charge of the operation, production, and quality of the Bakery and its products: His responsibility is fully described in an Application for an E-2 Visa that the LLC submitted to the U.S. Immigration and Naturalization Service for an E-2 Visa for the benefit of Mr. Roux.[1] While it was understood and agreed that Mr. Roux, a French National, would live in France some of the time, he agreed and promised to be physically present at the Bakery as necessary to perform his duties, including his duties as one of the Managing Members. While he did so for some time after the Bakery was opened, he has now effectively abandoned the Bakery, abandoned his obligations to the LLC, failed to perform required services for the Bakery, and materially breached his obligations to the Bakery and the LLC.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to Article III, § 2 of the Constitution of the United States, as implemented by statute,

---

[1] The E-2 Visa enables the holder to travel freely into and out of the United States to work. It is a special Visa authorized by INS to permit entrepreneurs from nations that have a Tax Treaty with the United States, who have committed to invest a large amount of money in a business or businesses in the United States, and who have committed to perform regular services and live in the United States at least as necessary to perform those services for that business. The INS granted Mr. Roux an E-2 Visa because the LLC sponsored his application. In the application for the E-2 Visa, Mr. Roux stated that the Visa was needed due to his services to the LLC and the Bakery required his frequent travel to the United States.

28 U.S.C. § 1332(a)(2), because this action is between citizens of a state (the Bakery is an LLC organized and existing pursuant to the laws of the District of Columbia) and a citizen of a foreign state (France), and the amount in controversy exceeds $75,000.

4.      This Court has general and special personal jurisdiction over Defendant Roux pursuant to Fed. R. Civ. P. ("Rule") 4 and D.C. Code § 13-423 because he regularly transacts business in the District of Columbia and the claims herein arise out of Roux's business transacted in the District of Columbia.

5.      Pursuant to D.C. Code § 29-808.02(2) it is self-evident that a demand on Mr. Roux to cause the LLC to bring the within action would have been futile.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

## **PARTIES**

7.      Plaintiff Boulangerie Christophe, LLC ("Plaintiff" or "the Bakery") is an LLC organized and existing pursuant to the laws of the District of Columbia. The Bakery operates its business and is located at 1422 Wisconsin Avenue, N.W., Washington, D.C. 20007.

8.      Defendant Christophe Roux is an individual and citizen of France. His address is Res Le Village 76 Chemin de la Pierre Plantée, LA CROIX-VALMER 83420 France. Mr. Roux has an E-2 Visa issued by the United States Immigration and

Naturalization Service ("INS") permitting Mr. Roux to work in the United States, and he regularly transacts business in the District of Columbia.

## FACTUAL ALLEGATIONS

9.      Boulangerie Christophe, LLC was formed in March 25, 2015 under the laws of the District of Columbia.

10.     The two Members of the LLC were Didier Martin and Christophe Roux. Each contributed $156,123 as initial operating capital.

11.     Since February 4, 2017, Boulangerie Christophe has operated a bakery and restaurant in Georgetown, Washington, D.C. The Bakery rented space at 1422 Wisconsin Avenue, N.W. in Georgetown, Washington, D.C. It hired and paid contractors in 2016 to remodel the rental space before it commenced operations. The Bakery sells high-end French pastries and bread to customers seven days a week. Upstairs from the bakery sales area on the first floor is a small restaurant that is generally open for breakfast, lunch, and special events. The restaurant offers its customers Southern French food that is made in-house at prices that are moderately expensive. Both the bakery and restaurant operations were doing fine for the first two years of the Bakery's existence.

12.     Mr. Martin is an experienced businessman and entrepreneur. When the Bakery was formed, he had little knowledge of bakeries or restaurants. He owns other businesses. He is a naturalized United States citizen.

13.     Christophe Roux is a citizen of France. His knowledge of English is limited. He is an experienced baker and pastry chef, as he owns and operates a bakery in

France. He is permitted entry to the United States by virtue of his French passport and an E-2 Visa issued by the United States Immigration Department.

14.     When the LLC was formed, Mr. Martin and Mr. Roux agreed that they would be partners. They signed an Operating Agreement that provides that Mr. Martin would be the Chief Executive Officer (CEO) and Mr. Roux would be the Chief Operating Officer (COO). Each was to be a Managing Member of the LLC.

15.     It was understood between Mr. Martin and Mr. Roux that Mr. Roux would be responsible for all aspects of managing and operating the Bakery. As stated in the E-2 Visa Application, and as he related to Mr. Martin and the LLC:

> [Roux] will negotiate and approve contracts with vendors, and work in close collaboration with them to ensure the bakery has the ingredients and products necessary for production. He will select all equipment needed for operations and sales, and will work closely with equipment vendors to insure maintenance, regulation and cleanliness in order to keep production on track. Mr. Roux will manage the employees, including recruiting, hiring and training. He will create the recipe process and for production and will insure the process is followed by the employees. He will create and update the menu of the bakery, depending on the season. He will review financial statements and sales reports to measure productivity and profitability, and identify ways to reduce costs and improve performance and procedures. Mr. Roux will lead marketing and design efforts to insure French taste and culture is carried throughout the company's website and videos,

as well as within the interior space of the bakery. He will also design and develop product packaging to optimize brand image and recognition of the bakery. He will prepare reports concerning operation activities, including budget, expenses, profit margins, *etc.*, and consult with Mr. Martin (the co-owner) about general operations issues and activities.

16.    These duties have not been performed regularly since the Bakery opened, and have not been performed in 2019. The duties cannot be performed adequately unless Mr. Roux is regularly on site at the Bakery to perform them.

17.    It was understood that Mr. Roux would continue to live in France with his family, but that he frequently would be physically present at the Bakery performing his duties and obligations.

18.    Indeed, he promised to be present so frequently that he induced the LLC to sponsor his application for an E-2 Visa, rent him and his family a home in Ft. Washington, MD, and lease him a car for use in the United States.

19.    During the time between formation of the LLC and the commencement of operations in February 2017, Mr. Roux was frequently present on-site at the Bakery. Throughout 2017 and 2018, he was present at the Bakery about eight days every six weeks, except he was absent from the Bakery and in France each year from the latter part of June through mid-September.

20.     Since January 1, 2019, before he was discharged from his obligations as COO on June 6, he was present at the Bakery a total of seventeen days: ten days in January, and seven days in May.

21.     Mr. Roux's virtual absence from the Bakery in 2019 has directly damaged the bakery. Mr. Roux has not been present to control the production and quality of the Bakery.

22.     The LLC paid $5,000 in legal fees to an immigration attorney on Mr. Roux's behalf to secure his Visa.

23.     Mr. Roux misrepresented his intentions to the LLC. It was reasonable for the Bakery to rely on Mr. Roux's representations in and sponsor Mr. Roux's Visa Application.

24.     Mr. Roux intended that the Bakery rely on his representations as an inducement to enter into the LLC agreement.

25.     It was further agreed between Mr. Martin and Mr. Roux that Mr. Martin would be responsible for the financial aspects of the Bakery.

26.     Mr. Roux agreed to make certain the Bakery's taxes are paid, that payroll is met, that expenses are paid, and that the operation is run in a cost efficient, profitable manner. Mr. Roux has not performed as agreed, and Mr. Martin has been forced to perform virtually all of Mr. Roux's duties (in addition to his own duties) for the Bakery.

27.     The absence of Mr. Roux from the Bakery has damaged the Bakery. Gross revenues have materially decreased during the first six months of 2019. There are markedly fewer customers at the Bakery than in prior years.

28.     There is no experienced baker or pastry chef on the premises at the Bakery.  There is no one with experience to supervise the kitchen of the restaurant or the bakery operations.

29.     As a result of Mr. Roux's absence, Mr. Martin has been forced to take over Mr. Roux's duties, including without limitation, responsibility for hiring and firing employees and for the operation of the Bakery. Mr. Roux hired none of the current staff members (approximately twenty individuals). Instead, Mr. Martin was forced to hire them, directly or indirectly.

30.     The Bakery is frequently inspected by the D.C. Health Department. On June 17, 2019, within a few days of Mr. Roux's discharge as COO of the Bakery, a health inspector made a surprise inspection. The inspector discovered vermin and several other areas of non-compliance. The Health Department directed the Bakery to remedy the violations within a few calendar days. Mr. Martin assembled a team of employees and hired an outside firm to address the vermin. Had Mr. Roux been performing his duties at the Bakery, these violations likely would not have occurred.

31.     Because it was understood between the Members that Mr. Roux would be frequently present at the Bakery to perform his duties, in October 2016 Mr. Roux proposed that the LLC rent a house for him at the LLC's expense. The house was on the

water in Ft. Washington, Maryland. The rent was $3,300 per month and the lease was for a year.

32.     The Bakery reasonably relied on Mr. Roux's representations as to the amount of time he would be present in the United States in agreeing to rent a house for him.

33.     After eight months, it was apparent that Mr. Roux was not present in the United States often enough to make the renting the residence worthwhile.

34.     Accordingly, the LLC retained counsel for the purpose of successfully negotiating with the landlord an early termination of the lease. In hindsight, it was a costly error for the LLC to rely on Mr. Roux's word and underwrite the cost of an expensive rental property.

35.     Similarly, because it was understood between the Members that Mr. Roux would be frequently present at the Bakery to perform his duties, in October 2016 Mr. Roux proposed that the LLC lease an automobile for him to drive while in the United States, and that the LLC make the lease payments.

36.     In reliance on Mr. Roux's representations as described herein, the LLC leased a Jeep Cherokee for forty two months at $368 per month. The vehicle is now only infrequently used by anyone in connection with the Bakery. In hindsight, it was a costly mistake for the LLC to have agreed to underwrite the cost of leasing the vehicle for Mr. Roux's use. It did this on the mistaken belief that Mr. Roux honor his agreement to be present at the Bakery often enough to make the lease worthwhile.

37. The Bakery had a lucrative agreement to provide bread and French pastries to a prominent local hotel, the Watergate. The agreement was cancelled by the hotel in April 2019 after only about six weeks because, according to the Hotelier, the Hotel considered the quality of the bread and the pastries to have declined markedly.

38. There have been increasing complaints from customers of the Bakery and the restaurant about the quality of the baked goods and food.

39. The Bakery is faced with declining quality, a cancelled contract, complaints from customers, declining gross revenues (approximately $50,000 in the first six months of 2019), an unnecessary automobile lease, and other matters that are materially adverse to the success of the Bakery. These matters, and the damages that flow from them, are directly and proximately the result of Mr. Roux's failure to perform as agreed and as represented to the LLC.

40. Since February 4, 2017, the Members (Mr. Roux and Mr. Martin) have each been paid $5,000 per month by the LLC in return for their services.

41. In January 2019, the Members had a licensed CPA appraise the value of the Bakery. He appraised its net worth at $1 million. The Members resolved to try to sell the Bakery.

42. When Mr. Roux returned to France in May 2019, Mr. Martin tried to interest third parties in purchasing the Bakery. He was not successful.

43. In June 2019, a third party offered to buy Mr. Roux's 50% interest in the LLC for $500,000 cash. Mr. Roux refused to sell.

44.     Mr. Martin made a written demand on Mr. Roux that he perform his obligations pursuant to the LLC agreement. Mr. Roux did not accede to Mr. Martin's demand. Any attempt to compel Mr. Roux to join in this lawsuit on behalf of the LLC would be futile.

45.     By June 2019, with the Bakery's profits and quality declining, and having been forced by Mr. Roux's absence to assume virtually every responsibility for operating the Bakery, Mr. Martin took necessary steps to protect the LLC. Faced with a partner who was almost never present, who was not performing his duties and obligations, and who told him his "life, family, and friends were in France" and that it was "too hard" to come to the U.S. frequently, he sent Mr. Roux a letter by email (the parties usual method of written communication).

46.     The letter, dated June 6, 2019, stated that Mr. Martin, acting in the best interests of the Bakery, had decided that it was necessary for the Bakery to hire a pastry chef and baker. It further stated that Mr. Roux was relieved of his duties at the Bakery because of his frequent and prolonged absence, and his failure to perform his legal obligations to the Bakery as COO and as a Member of the LLC. The letter further informed Mr. Roux that the Bakery would no longer pay him the $5,000 per month draw that it had paid each month through June 2019. It also stated that he is relieved as COO of the business. It also stated charging on a Visa card belonging to Mr. Martin were suspended, and he was told he may not access the company bank account. The

letter also provided that Mr. Roux could have access to the LLC's books and records upon reasonable notice.

47.     Mr. Martin acted in exigent circumstances in the belief that his actions were in the best interest of the LLC. That is also expressed in the letter.

48.     Since the letter was sent, Mr. Roux made a hasty trip to the United States for four days, and was physically present at the bakery twice, on two successive days. He requested and was allowed use of the leased Jeep Cherokee. Immediately after this cameo appearance, Mr. Roux returned to France.

## COUNT ONE
## BREACH OF CONTRACT

49.     Plaintiff incorporates each of the previous allegations of the Complaint as if fully set forth herein.

50.     Mr. Roux agreed to perform valuable, unique services for the Bakery, to be physically present at the Bakery frequently, to perform all the acts described by the LLC in the E-2 Visa Application, including overseeing quality, sales, operations, hiring, firing, and supervising employees, to be in charge of the working conditions and production at the Bakery (including the health and safety conditions of the Bakery).

51.     In order to perform his obligations under the LLC agreement Mr. Roux must regularly be present at the Bakery.

52.     In order to perform his obligations under the Bakery agreement, Mr. Roux must regularly be present at the Bakery.

53.     Mr. Roux lives in France and is rarely, if ever, present at the Bakery. In 2019 he has been at the Bakery only seventeen days.

54.     Mr. Roux has materially breached the LLC agreement as well as his contract with the Bakery.

55.     Plaintiff has performed all of his obligations under the LLC agreement and the Bakery agreement.

56.     As a direct, proximate, and foreseeable result of Mr. Roux's breach of the LLC Agreement, Plaintiff has suffered and will continue to suffer damages in excess of $75,000.

## COUNT TWO
## <u>MISREPRESENTATION</u>

57.     Plaintiff incorporates each of the previous allegations of the Complaint as if fully set forth herein.

58.     Mr. Roux materially misrepresented to the LLC his commitment to the Bakery and to perform his required services for the Bakery. He misled the LLC into agreeing to lease an expensive home for him to live in while present in the United States. He misled the LLC into agreeing to lease a vehicle for him to drive while present in the United States.

59.     Each of these representations were made to the Bakery as a material inducement to the LLC agreement.

60.     Mr. Roux misrepresented his commitments to the LLC with the knowledge that the LLC would reasonably rely on them.

61.     The LLC reasonably relied on Mr. Roux's representations to its detriment.

62.     As a direct, proximate, and foreseeable result, the Bakery has suffered and will continue to suffer damages.

## COUNT THREE
## RECOUPMENT OF PAYMENTS

63.     Plaintiff incorporates each of the previous allegations of the Complaint as if fully set forth herein.

64.     Plaintiff has paid Mr. Roux $6,000 per month (including $1,000 per month for travel expenses) since the Bakery opened in February 2017. These payment were intended to be in return for Mr. Roux's services.

65.     Mr. Roux has materially breached his promise and agreement to the LLC to perform required, unique services for the Bakery.

66.     As a result, the Bakery has paid Mr. Roux amounts for services he has not performed.

67.     It would be inequitable for Mr. Roux to retain and continue to receive payments for services he has not and will not render to the LLC and the Bakery.

68.     Accordingly, the LLC and the Bakery are entitled to recoup the payments that it has made to Mr. Roux since 2019.

## COUNT FOUR
## UNJUST ENRICHMENT

69.     Plaintiff incorporates each of the previous allegations of the Complaint as if fully set forth herein, except for the allegation of an enforceable contracts between Mr. Roux and the Bakery and the LLC.

70.     Mr. Roux has received and retained financial benefits in the form of payments for services he was to render to the Bakery and the LLC.

71.     Mr. Roux has not performed any such services since 2018, but continues to receive such payments.

72.     The payments have been made by and at the expense of the Bakery and the LLC.

73.     Under the circumstances, it would be inequitable for Mr. Roux to retain the benefits described above.

74.     Equity dictates that Mr. Roux return to and reimburse the Bakery and the LLC the compensation and other benefits he has received since January, 2019.

## PRAYER FOR INJUNCTIVE AND OTHER RELIEF

WHEREFORE, Plaintiff Boulangerie Christophe LLC respectfully prays that the Court provide the following relief:

A.     That this Court find that the Defendant has breached the LLC and Operating Agreements;

B.     That the Court declare that the LLC is entitled to expel Mr. Roux as COO of the Bakery;

C.   That the Court declare that the LLC is entitled to the return of all monthly payments that have been made by it to Mr. Roux since at least the beginning of 2019, and that it enter its Order directing Mr. Roux to pay the full amount with interest within 20 days;

D.   That the Court enter judgment in its favor and against the Mr. Roux, and further;

E.   That  the Court award Plaintiff its attorneys' fees and litigation expenses pursuant to D.C. Code § 29-808.06.

F.   That the Court enter such other and further relief as it deems appropriate in the premises.

<u>**PLAINTIFF DEMANDS A JURY**</u>

July 9, 2019                                      Respectfully submitted,

Steven Gremminger (Bar No. 353821)
Steven M. Oster (Bar No. 376030
**GREMMINGER LAW FIRM**
5335 Wisconsin Ave., N.W., Suite 440
Washington, D.C. 20015
(202) 885-5526

*Counsel to Plaintiff*